# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**NIKOLAOS T. HATZIEFSTATHIOU,**
a/k/a "Nik the Hat,"
712 Cedar Grove Road
Broomall, Pennsylvania 19008

Plaintiff, Pro Se,

v.

**JESSICA LYNNE SENG,**
a/k/a "Granny's Watching,"
548 Tasker Avenue
Norwood, PA 19074

**STEPHANIE JO TRUDE,**
a/k/a "BBQ Lady" and "BBQLADYY,"
827 Bedford Street
Claysburg, PA 16625-7708
-or-
2003 14th Ave
Altoona, PA 16601

and

**JOHN/JANE DOES 1-10,**

Defendants.

**CIVIL ACTION NO:**
**2:26-cv-04659-HB**

**JURY TRIAL DEMANDED**

## PROPOSED FIRST AMENDED VERIFIED COMPLAINT AND JURY DEMAND

EXHIBIT A TO PLAINTIFF'S RULE 15(a)(2) MOTION

### I. INTRODUCTION

1. Plaintiff Nikolaos T. Hatziefstathiou, proceeding pro se and only on his own behalf, brings this civil action against Defendants Jessica Lynne Seng, Stephanie Jo Trude, and John/Jane Does 1-10.

2. This action concerns alleged post-notice publications, identity uses, false implications, subpoena-content use, privacy invasions, and evidence-preservation issues arising from Defendants' public-facing online content and related activity.

3. Plaintiff does not sue because Defendants criticized him, discussed public court proceedings, expressed opinions, used satire, or commented on matters of public concern.

4. Plaintiff sues because Defendants allegedly used his name, alias, legal-process status, supposed appearance, subpoena status, parole-status narrative, and professional identity without consent in audience-facing, promotional, monetized, fundraising, or commercially valuable content; published specific false statements and false implications; and created a continuing risk that native platform evidence will be altered, deleted, concealed, clipped, mirrored, overwritten, or lost.

5. Plaintiff does not ask this Court to reverse, vacate, modify, or supervise any order entered by a Pennsylvania state court. State-court materials are referenced only for chronology, notice, post-notice conduct, evidentiary context, preservation need, damages, and non-relitigation background.

6. The relief requested is damages, declaratory relief, and preservation-first injunctive relief that protects lawful criticism, opinion, fair comment, satire, public-record reporting, and discussion of public proceedings.

## II. PARTIES

7. Plaintiff Nikolaos T. Hatziefstathiou is an adult individual and citizen of Pennsylvania. He resides in the Eastern District of Pennsylvania and is publicly known as "Nik the Hat."

8. Plaintiff proceeds pro se and only for himself. He does not assert claims for One World Society Corp., AtNight Media LLC, Duane Chapman, Seth Rogers, Hong Xie, Brittney Jackson, any witness, any business entity, any minor, any family member, or any third party.

9. Plaintiff has used his public identity in media, public-safety reporting, business development, legal-support work, and community-facing activities. He alleges personal harm to his name, alias, reputation, public identity, professional relationships, legal relationships, and ability to rebuild his life.

10. Plaintiff has a prior conviction and incarceration history that he has publicly acknowledged. He alleges that he has apologized, pursued rehabilitation, complied with supervision obligations, and worked to rebuild his reputation and community trust.

11. Truthful discussion of Plaintiff's public criminal-history record is not the wrong alleged in this action. The actionable conduct alleged here is Defendants' alleged weaponization of that history with new false implications of present danger, predation, fraud, parole-control-by-strangers, professional unfitness, official targeting, consent, appearance, waiver, or affiliation.

12. Defendant Jessica Lynne Seng is alleged to be an adult individual associated with public-facing online content known as "Granny's Watching."

13. Defendant Seng is sued for her own alleged conduct and for acts of persons shown by evidence to be her agents or persons acting in active concert with her.

14. Defendant Stephanie Jo Trude is alleged to be an adult individual associated with the @BbqLadyy account and public-facing online content under the names "BBQ Lady," "BBQLADYY," and similar aliases.

15. Defendant Trude is sued for her own alleged conduct and for acts of persons shown by evidence to be her agents or persons acting in active concert with her.

16. John/Jane Does 1-10 are presently unidentified persons, account operators, co-hosts, moderators, clip or mirror uploaders, panelists, or other actors who may have engaged in actionable publication, republication, doxxing, evidence destruction, commercial identity use, interference, or substantial assistance.

17. Plaintiff seeks no judgment against any Doe unless that Doe is identified, added or substituted under the applicable rules, and served under Fed. R. Civ. P. 4.

## III. JURISDICTION AND VENUE

18. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under 15 U.S.C. § 1125(a)(1)(A) and 18 U.S.C. § 2520.

19. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related Pennsylvania-law claims because they arise from the same alleged course of publication, identity use, false implication, post-notice escalation, reputational injury, privacy injury, and evidence-preservation need.

20. Plaintiff seeks declaratory relief under 28 U.S.C. § 2201.

21. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Plaintiff resides in this District, Defendant Seng is alleged to reside in Pennsylvania, Defendant Trude is alleged to reside in Pennsylvania, and a substantial part of the events, effects, injury, audience impact, subpoena-related conduct, parole-supervision impact, professional harm, and preservation need occurred in or was directed into this District.

22. Plaintiff will serve each named Defendant after summons issues. No Doe Defendant will be treated as served, bound, or subject to judgment merely by inclusion in this caption.

23. Plaintiff seeks preliminary injunctive relief only against named Defendants who receive proper notice and against persons properly bound under Fed. R. Civ. P. 65(d)(2) after actual notice.

## IV. STATE-COURT CHRONOLOGY AND NON-RELITIGATION

24. Plaintiff previously participated in the Delaware County action captioned AtNight Media LLC et al. v. Trude et al., No. CV-2024-009083.

25. On April 17, 2025, the Delaware County Court of Common Pleas entered orders concerning anti-SLAPP dismissal, fees and costs, and denial of a protective-order request.

26. The state-court materials are referenced here only for chronology, notice, public framing, post-notice conduct, evidentiary context, damages, and preservation need.

27. Plaintiff does not ask this Court to decide any issue pending in the Pennsylvania appellate courts.

28. Plaintiff does not seek to relitigate a broad speech-based state-court injunction request. The federal relief requested here is narrower and preservation-first.

## V. FACTUAL ALLEGATIONS

29. Plaintiff is known by his legal name and by the public alias "Nik the Hat."

30. Plaintiff alleges commercial, professional, reputational, and personal value in his name, alias, voice, image, public identity, and professional persona.

31. Plaintiff did not consent to Defendants representing that he agreed to appear, testified voluntarily, accepted service, waived objections, endorsed content, participated in a livestream, authorized commercial use of his identity, or affiliated with Defendants' broadcasts, posts, livestreams, fundraising activity, or promotional content.

32. Plaintiff did not consent to counsel correspondence, subpoena discussions, legal-process communications, or nonparty objections being used as audience-facing content implying his participation, waiver, appearance, endorsement, sponsorship, or authorization.

33. On June 26, 2026, counsel correspondence in a related matter referenced contemplated subpoena practice concerning Plaintiff.

34. On June 27, 2026, a cease-and-desist, nonparty subpoena-objection, and litigation-hold notice was sent concerning the alleged use of counsel correspondence and nonparty subpoena discussions as audience-facing content.

35. The June 27 notice identified a same-day Granny's Watching livestream titled "Infested With Stupidity. Encouraging Calls to the Judge? My Attorney Responds" and related same-day clip or mirror uploads.

36. Plaintiff alleges that the same-day content used or threatened to use his name, alias, alleged subpoena status, alleged testimony, supposed court appearance, and legal-process posture in a manner likely to imply participation, waiver, affiliation, approval, or authorization.

37. The June 27 notice demanded preservation of native recordings, livestreams, clips, posts, comments, chats, metadata, analytics, monetization records, deletion logs, emails, messages, and related materials.

38. Plaintiff alleges that screenshots alone are insufficient because livestreams, titles, thumbnails, comments, chats, platform notices, metadata, analytics, monetization records, clip or mirror uploads, edit histories, and deletion histories may disappear or become impossible to reconstruct.

39. Plaintiff alleges that a native video and public page capture, transcript, title, thumbnail, description, metadata, and mirror or cross-post materials are relevant to the Seng-related allegations.

40. Plaintiff previously sought leave at ECF No. 3 to submit native-source multimedia conventionally rather than embed multimedia in PDF or Word filings. Any native media will be submitted only as authorized by the Court.

41. On or about June 17, 2026, Trude used the @BbqLadyy account to tag Plaintiff's @nikthehat account and publicly reference a Blair County courthouse proceeding and sensitive legal-status language involving a minor-related matter.

42. Plaintiff does not ask this Court to adjudicate any separate Blair County proceeding or any minor-related proceeding.

43. Plaintiff alleges that Trude's public pairing of Plaintiff's identity with sensitive legal-status language was misleading, inflammatory, and foreseeably escalatory.

44. On or about June 17, 2026, Trude published a post about Plaintiff that X displayed with a visibility-limitation notice stating that the post may violate X's rules against abuse.

45. Plaintiff does not cite the X label as a legal finding and does not plead vulgar insults or generalized insults as standalone defamation.

46. Plaintiff cites the visibility-limitation label as platform context, tone, and evidence relevant to false light, emotional distress, preservation, and the need for narrow relief.

47. On or about June 17, 2026, Trude published a post tagging @nikthehat and stating, among other things, that Plaintiff had a "4.7 million dollar judgement as proof" that he liked to defame people.

48. In the same post, Trude stated that Plaintiff wanted people to commit suicide.

49. Plaintiff alleges that the judgment statement was false or materially misleading to the extent it communicated that Plaintiff had been adjudicated liable in that amount for defamation or that the judgment proved Plaintiff liked to defame people.

50. Plaintiff alleges that the self-harm-imputation statement was false or materially misleading to the extent a reasonable reader would understand it as asserting that Plaintiff desired or encouraged self-harm by others.

51. On or about June 29, 2026, Trude publicly posted that she was heading to her attorney's office and had dropped off lunch to a sheriff's office, later referring to "DELCO."

52. Plaintiff does not allege that any sheriff, court employee, law-enforcement officer, or public official endorsed Trude's statements, acted improperly, accepted improper influence, participated in the challenged conduct, or was influenced by Trude.

53. Plaintiff cites the June 29 posts only as chronology and litigation-themed public messaging linking the dispute to attorneys, courthouse actors, and law-enforcement imagery, not as bribery, corruption, official endorsement, or official misconduct.

54. Plaintiff alleges that Defendants and aligned accounts engaged in daily or near-daily livestreams, posts, reposts, panels, or social-media publications concerning Plaintiff, his legal status, parole status, criminal history, professional identity, witnesses, visitors, counsel, and related litigation from approximately September 2024 through the filing date.

55. Plaintiff alleges that the scale and repetition of the content increased the likelihood of third-party escalation, evidence loss, reputational injury, safety concerns, and supervision-related disruption.

56. Plaintiff reported online stalking concerns, threat concerns, suspicious physical activity, and related safety matters to law enforcement or public reporting channels.

57. Plaintiff does not allege that every third-party threat, message, complaint, suspicious vehicle, report, or contact was caused by Defendants.

58. Plaintiff alleges that the safety reports show the effect on Plaintiff, the escalation environment, and the need for preservation and limited relief.

59. Plaintiff alleges that the sustained and escalating conduct caused severe emotional distress and materially aggravated his physical and mental condition.

60. Plaintiff alleges substantial weight loss, anxiety symptoms, trauma symptoms, sleep disruption, and medical or neurological issues under evaluation.

61. Plaintiff does not allege that Defendants are the sole cause of every symptom. Plaintiff alleges material aggravation from repeated public targeting, legal-status framing, identity use, official-pressure prompts, and third-party escalation.

62. Plaintiff alleges that his supervision environment was affected by repeated third-party complaints arising from the online controversy.

63. Plaintiff does not allege that parole officers, court staff, sheriffs, police officers, or public officials acted improperly.

64. Plaintiff alleges that Defendants' repeated public framing of him as dangerous, fraudulent, predatory, criminal, professionally unfit, or subject to official action foreseeably encouraged third-party reporting and pressure.

65. Plaintiff alleges that the challenged publications and public framing harmed his personal reputation, professional identity, prospective relationships, and ability to obtain legal, professional, witness, community, and economic support.

66. Plaintiff pleads corporate, nonprofit, media-project, insurance, or organizational materials only as personal-professional context or interference context, and not as claims belonging to any entity or third party.

67. Plaintiff alleges that legal-process and preservation language was publicly recast in a misleading way to imply stalking, surveillance, improper targeting, or predatory conduct.

68. Plaintiff alleges that litigation-preservation language is a record-retention measure, not an instruction to contact, surveil, stalk, or target any person.

69. Plaintiff will not publicly identify minors, private medical details, private supervision details, family information, private contact information, or safety-sensitive details except as permitted by law and necessary to the claims.

70. Before this federal action, Plaintiff personally communicated with and received legal services from Bruce L. Castor, Jr. in matters separate from this action. Castor did not enter an appearance for Plaintiff in this action.

71. On October 19, 2024, at 12:25 p.m., Castor emailed Plaintiff: "Jessica tried to hire me against you. Small world." Supp. Ex. G-2A.

72. At 1:57 p.m., Plaintiff replied that he viewed the contact as tactical and wrote that Seng knew Castor was "our lawyer." Supp. Ex. G-2B. The reply establishes Plaintiff's contemporaneous understanding; it does not independently establish Seng's knowledge or intent.

73. At 3:14 p.m., Castor emailed Plaintiff: "She told our intake person that she was being sued. So she must be a defendant." Supp. Ex. G-2C.

74. Read together, the emails show that Castor contemporaneously attributed an attempted adverse retention to "Jessica" and later reported that a woman told his firm's intake person she was being sued. The emails do not establish whether Jessica personally communicated with intake, whether another person acted for her, whether the intake contact and recorded call were the same communication, or the communicator's telephone number, location, exact words, or routing.

75. On October 20, 2024, Plaintiff sent an email stating that Seng had broadcast a call involving Joseph P. Lesniak's office on YouTube. Supp. Ex. G-2D. The email records Plaintiff's contemporaneous understanding; it does not independently establish who broadcast that call or state that Plaintiff knew audio attributed to Castor had been published.

76. On May 13, 2025, the YouTube channel displayed as "Granny's Watching" livestreamed The Quickest Way To Ruin Publicity For The Missing. The archived video bears stable video identifier uMvUcWpQFf8. Supp. Ex. G-1.

77. At approximately 22:39–22:43, the host states that she did not make the call and that somebody else called. Supp. Ex. G-1. Plaintiff does not allege from the video alone that Seng personally placed the call. Caller identity and any agency or coordination remain unestablished.

78. At approximately 30:40–38:04, the host introduces and plays excerpts of an apparent telephone recording attributed by the host to Castor. Supp. Ex. G-1. The present record does not authenticate the male voice, establish the recording's completeness, identify the recorder or participants' locations, or establish notice or consent.

79. Plaintiff alleges from personal knowledge that he first located the archived livestream containing audio attributed by the host to Castor on July 26, 2026. Plaintiff knew in 2024 that a contact with Castor had occurred and that a separate Lesniak-office call had been broadcast, but he had not previously located this archived publication.

80. Based on Castor's contemporaneous emails and the later public use of audio attributed to him, Plaintiff alleges on information and belief that the contact attributed to Jessica was not a bona fide retention inquiry but an effort to obtain access to an attorney Plaintiff understood to represent him. The present record does not establish caller identity, agency, intake routing, whether the recorded call was the same contact reported by intake, or whether any legal service was disrupted.

## VI. COUNTS

### COUNT I — FALSE ASSOCIATION / FALSE ENDORSEMENT UNDER 15 U.S.C. § 1125(a)(1)(A)

81. Plaintiff incorporates the preceding paragraphs.

82. Seng and persons acting with her used Plaintiff's name, alias, alleged subpoena status, alleged testimony, supposed court appearance, legal-process posture, and professional identity in audience-facing content connected to public viewership, promotion, fundraising, monetization, audience growth, or comparable commercial value.

83. The uses were false or misleading because they implied Plaintiff's consent, participation, waiver, affiliation, approval, sponsorship, or authorization when no such consent, waiver, affiliation, approval, sponsorship, or authorization existed.

84. The alleged use was likely to cause confusion or mistake as to Plaintiff's connection, association, sponsorship, approval, or participation and injured Plaintiff's reputation, professional identity, prospective relationships, and ability to control the commercial use of his persona.

85. Plaintiff seeks all relief available under 15 U.S.C. § 1125(a)(1)(A), including damages and declaratory relief.

## COUNT II — FEDERAL UNLAWFUL INTERCEPTION, DISCLOSURE, OR USE OF COMMUNICATIONS UNDER 18 U.S.C. §§ 2511 AND 2520

86. Plaintiff incorporates the preceding paragraphs.

87. Defendants intentionally intercepted, endeavored to intercept, or procured the interception of Plaintiff's wire, oral, or electronic communications, or intentionally disclosed or used the contents of Plaintiff's communications knowing or having reason to know that the contents were obtained through an interception prohibited by 18 U.S.C. § 2511.

88. The alleged disclosure or use occurred in public-facing content, litigation-themed broadcasts, clips, posts, mirrors, or promotional materials after Plaintiff had not consented to that use.

89. Plaintiff alleges injury to privacy, reputation, legal relationships, supervision environment, emotional health, and professional relationships from the disclosure or use of the communications. This Count concerns Plaintiff's own communications. The apparent Castor call is not shown to be a communication to which Plaintiff was a party and is not pleaded as an interception of Plaintiff's own communication.

90. For covered communications proved to have been unlawfully intercepted, disclosed, or used, Plaintiff seeks the civil relief authorized by 18 U.S.C. § 2520 for violations of 18 U.S.C. § 2511.

## COUNT III — PENNSYLVANIA UNLAWFUL INTERCEPTION, DISCLOSURE, OR USE OF COMMUNICATIONS UNDER 18 PA. CONS. STAT. §§ 5703 AND 5725

91. Plaintiff incorporates the preceding paragraphs.

92. Defendants intentionally intercepted, endeavored to intercept, or procured the interception of Plaintiff's wire, electronic, or oral communications, or intentionally disclosed or used the contents of Plaintiff's communications knowing or having reason to know that the contents were obtained through an interception prohibited by 18 Pa. Cons. Stat. § 5703.

93. Plaintiff alleges on information and belief that the challenged acquisition of his communications by a device occurred in Pennsylvania and that all parties had not given prior consent to the interception.

94. Plaintiff alleges injury to privacy, reputation, legal relationships, professional relationships, safety, and emotional health. The apparent Castor call is not shown to be a communication to which Plaintiff was a party and is not pleaded as an interception of Plaintiff's own communication.

95. For communications and conduct proved to fall within Chapter 57, Plaintiff seeks the civil relief authorized by 18 Pa. Cons. Stat. § 5725 for violations of 18 Pa. Cons. Stat. § 5703.

## COUNT IV — UNAUTHORIZED COMMERCIAL USE OF NAME, LIKENESS, ALIAS, OR PERSONA UNDER 42 PA. CONS. STAT. § 8316

96. Plaintiff incorporates the preceding paragraphs.

97. Defendants used Plaintiff's name, alias, image, voice, handle, legal status, or persona without written consent in posts, livestreams, thumbnails, titles, tags, clips, mirrors, fundraising, paid streams, monetized content, or comparable audience-facing content.

98. The uses had commercial, advertising, fundraising, audience-growth, promotional, or monetization value to Defendants or their associated channels, accounts, or content.

99. Plaintiff did not consent to the commercial or promotional use of his identity, alias, handle, legal status, or persona.

100. Plaintiff seeks relief under 42 Pa. Cons. Stat. § 8316.

## COUNT V — FALSE LIGHT AGAINST JESSICA LYNNE SENG

101. Plaintiff incorporates the preceding paragraphs.

102. Seng gave publicity to matter concerning Plaintiff by public-facing livestream, clip, mirror, title, thumbnail, description, transcript, metadata, chat, or associated content.

103. The publicity placed Plaintiff in a false light by implying consent, voluntary appearance, waiver, service acceptance, affiliation, authorization, or participation in the content or legal-process framing.

104. The false light would be highly offensive to a reasonable person because it made Plaintiff appear to have consented to, participated in, or endorsed conduct and content he opposed.

105. Seng acted with knowledge of or reckless disregard for the false-light implication after the June 27 notice identified Plaintiff's no-consent position.

## COUNT VI — FALSE LIGHT AGAINST STEPHANIE JO TRUDE

106. Plaintiff incorporates the preceding paragraphs.

107. Trude gave publicity to matter concerning Plaintiff through @BbqLadyy posts, tags, courthouse/legal-status framing, judgment and self-harm-imputation statements, law-enforcement-proximity messaging, and related content.

108. The publicity placed Plaintiff in a false light by implying present danger, predation, fraud, professional unfitness, official targeting, improper relationship to minor-related matters, or desire that others harm themselves.

109. The false light would be highly offensive to a reasonable person and was not merely criticism, insult, rhetorical hyperbole, or protected opinion.

110. Trude acted with knowledge of or reckless disregard for the false-light implications because the posts used specific factual and legal-status framing while tagging Plaintiff's public handle.

## COUNT VII — DEFAMATION, DEFAMATION PER SE, AND DEFAMATION BY IMPLICATION

111. Plaintiff incorporates the preceding paragraphs.

112. Trude published statements of and concerning Plaintiff, including statements that Plaintiff had a "4.7 million dollar judgement as proof" that he liked to defame people and that Plaintiff wanted people to commit suicide.

113. Those statements were defamatory or defamatory by implication because they communicated or implied that Plaintiff had been adjudicated liable for defamation in that amount, had a proven habit of defaming people, desired self-harm by others, or was presently dangerous, predatory, fraudulent, professionally unfit, or subject to official action.

114. The statements were published to third parties, applied to Plaintiff by name, handle, or context, and were understood by recipients as applying to Plaintiff.

115. Plaintiff alleges falsity, fault, reputational injury, personal humiliation, emotional distress, professional harm, and damages under 42 Pa. Cons. Stat. § 8343 and Pennsylvania common law.

## COUNT VIII — COMMERCIAL DISPARAGEMENT / INJURIOUS FALSEHOOD

116. Plaintiff incorporates the preceding paragraphs.

117. Defendants published false or misleading statements and implications about Plaintiff's professional identity, public-service role, media identity, legal relationships, business credibility, witness relationships, and economic fitness.

118. The statements and implications were directed to the audience, contacts, agencies, witnesses, counsel, supporters, and professional relationships on which Plaintiff depended for personal economic and professional rebuilding.

119. Defendants knew or should have known that the statements and implications would interfere with Plaintiff's professional and economic expectancies.

120. Plaintiff alleges pecuniary loss, reputational injury, loss of prospective relationships, mitigation costs, and other damages.

## COUNT IX — INVASION OF PRIVACY / PUBLIC DISCLOSURE OF PRIVATE FACTS / DOXXING-RELATED PRIVACY TORT

121. Plaintiff incorporates the preceding paragraphs.

122. Defendants publicly disclosed or used private or safety-sensitive facts concerning Plaintiff, including private identifiers, home-location context, medical or supervision context, family or minor-related context, law-enforcement contact context, visitor or witness context, and other nonpublic facts.

123. The disclosures or uses would be highly offensive to a reasonable person and were not necessary to lawful public-record reporting or fair comment.

124. The disclosures increased Plaintiff's fear, safety concerns, supervision pressure, and need for police or public reporting.

125. Plaintiff seeks damages, redaction-sensitive handling, and preservation of native evidence reflecting the disclosures.

## COUNT X — INTRUSION UPON SECLUSION

126. Plaintiff incorporates the preceding paragraphs.

127. Defendants intentionally intruded or encouraged intrusion into Plaintiff's private affairs, private spaces, private communications, safety reporting, supervision context, visitor relationships, legal relationships, or personal affairs.

128. The intrusion included alleged surveillance, filming, following, private-device or private-communication acquisition, or publication of material obtained from private affairs.

129. The intrusion would be highly offensive to a reasonable person in Plaintiff's position, particularly given the daily or near-daily escalation, threats, supervision environment, and public criminal-history weaponization.

130. Plaintiff alleges privacy injury, emotional distress, safety injury, and related damages.

## COUNT XI — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

131. Plaintiff incorporates the preceding paragraphs.

132. Defendants engaged in an extreme and outrageous course of conduct by repeatedly weaponizing Plaintiff's criminal-history and supervision context, pairing his identity with sensitive legal-status implications, using legal-process material as content, encouraging third-party pressure, and creating a public escalation environment.

133. Defendants acted intentionally or recklessly because they used specific identity, legal-process, and official-pressure framing while aware that Plaintiff disputed consent, affiliation, and the factual implications.

134. Plaintiff suffered severe emotional distress, anxiety symptoms, trauma symptoms, sleep disruption, substantial weight loss, and aggravation of medical or neurological concerns under evaluation.

135. Plaintiff alleges that Defendants' conduct materially caused or aggravated the distress and related injuries.

## COUNT XII — TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE PROFESSIONAL, LEGAL, WITNESS, BUSINESS, AND ECONOMIC RELATIONS

136. Plaintiff incorporates the preceding paragraphs.

137. Plaintiff had existing and prospective relationships with counsel, witnesses, agencies, supporters, media contacts, professional contacts, community contacts, public-safety contacts, and economic opportunities. Before this action, Plaintiff personally communicated with and received legal services from Castor in separate matters.

138. Defendants intentionally interfered or attempted to interfere with those relationships by publicly framing Plaintiff as dangerous, fraudulent, predatory, criminal, professionally unfit, subject to official action, or affiliated with Defendants' content and legal-process narratives. Plaintiff alleges on information and belief that Seng knew of Plaintiff's legal relationship with Castor. Supplemental Exhibit G-2B shows Plaintiff's contemporaneous understanding, but does not independently prove Seng's knowledge.

139. Plaintiff alleges on information and belief that the intake contact and later publication of audio attributed to Castor were intended to obtain information about, place pressure on, or interfere with Plaintiff's legal relationship. The present record does not establish that Castor withdrew, delayed, limited, or increased the cost of any legal service as a result.

140. Plaintiff alleges that the broader interference was intentional and improper because it relied on false factual implications, privacy invasions, legal-process misuse, doxxing-related pressure, and an escalating public campaign, and that it caused chilled relationships, lost opportunities, mitigation costs, and personal legal, professional, reputational, and economic injury. The Castor episode is pleaded only as circumstantial evidence of alleged knowledge and purpose within the broader course of interference. Plaintiff does not attribute a specific lost legal service, fee, or opportunity to that episode on the present record.

## COUNT XIII — ABUSE OF PROCESS / SUBPOENA MISUSE

141. Plaintiff incorporates the preceding paragraphs.

142. Seng used or attempted to use subpoena practice, counsel correspondence, and nonparty legal-process communications for an improper collateral purpose: audience-facing content, leverage, public pressure, humiliation, false consent or appearance implications, and media escalation.

143. The alleged use of process was not limited to legitimate litigation purpose and instead converted legal process into content and leverage against Plaintiff.

144. Plaintiff suffered legal expense, privacy injury, reputational injury, emotional distress, and interference with legal relationships as a result.

145. Plaintiff seeks damages and narrow preservation relief concerning the process-related materials.

## COUNT XIV — CIVIL CONSPIRACY / CONCERTED ACTION

146. Plaintiff incorporates the preceding paragraphs.

147. On information and belief, based on shared livestream panels, statements of plans to communicate, coordinated or mutually reinforcing posts, clips, mirrors, tags, third-party activation, legal-process framing, audience escalation, and the sourcing and publication of nonpublic material, Defendants and one or more Doe actors acted in concert. ECF Nos. 10-5 to 10-7.

148. The alleged object of the concerted action was to use Plaintiff's identity, criminal-history narrative, legal status, professional identity, private information, and legal-process posture to harm Plaintiff, grow audience interest, activate third parties, and pressure legal or official relationships.

149. The concerted action included underlying torts pleaded in this Complaint, including false light, defamation, invasion of privacy, intrusion, tortious interference, abuse of process, unauthorized commercial use, and unlawful communication disclosure or use. The May 13, 2025 host statement that somebody else called, followed by publication of audio attributed to Castor, supports only an inference of participation by another person and does not establish the caller's identity, Seng's personal placement of the call, agency, speaker identity, consent, or recording lawfulness. Supp. Ex. G-1.

150. Plaintiff alleges that the concerted conduct was undertaken with malice or specific intent to injure and caused damages through one or more independently actionable underlying claims.

**COUNT XV — AIDING AND ABETTING / SUBSTANTIAL ASSISTANCE**

151. Plaintiff incorporates the preceding paragraphs.

152. In the alternative to Count XIV and to the extent recognized by applicable Pennsylvania law, Defendants and Does knowingly provided substantial assistance or encouragement to actionable torts by hosting, moderating, clipping, mirroring, reposting, tagging, promoting, amplifying, fundraising from, or preserving access to challenged content.

153. The assistance was substantial because it expanded the audience, preserved false implications, increased third-party activation, multiplied publications, or made deletion or reconstruction of native evidence more difficult.

154. Defendants knew or should have known that the assisted conduct used Plaintiff's identity, legal status, criminal-history narrative, and private or legal-process information without consent and in a manner causing harm. The Castor-related episode is pleaded only as evidence of possible sourcing or assistance by an unidentified person, not as proof that Seng personally called or unlawfully recorded Castor. Supp. Exs. G-1, G-2.

155. Plaintiff alleges damages caused by independently actionable underlying torts and the substantial assistance.

**COUNT XVI — DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**

156. Plaintiff incorporates the preceding paragraphs.

157. An actual controversy exists concerning whether Plaintiff consented to, appeared for, participated in, waived objections to, authorized, endorsed, sponsored, or affiliated with Defendants' challenged content or legal-process framing.

158. An actual controversy also exists concerning preservation duties for native recordings, posts, clips, mirrors, transcripts, comments, chats, metadata, analytics, monetization records, deletion logs, and related communications.

159. Plaintiff seeks declarations that he did not consent to, authorize, sponsor, affiliate with, or endorse the challenged uses and that Defendants must preserve covered evidence.

160. The requested declarations will clarify legal relations without requiring this Court to supervise or reverse any state-court order.

## COUNT XVII — PRESERVATION AND LIMITED INJUNCTIVE RELIEF UNDER FED. R. CIV. P. 65

161. Plaintiff incorporates the preceding paragraphs.

162. Plaintiff is likely to suffer irreparable harm absent preservation relief because native platform evidence, livestream evidence, metadata, monetization records, comments, chats, deletion histories, and mirror chains may be deleted, altered, unlisted, concealed, overwritten, or lost.

163. The requested relief is limited to preservation of covered evidence, prevention of false representations that Plaintiff consented or affiliated, protection of private identifiers and minor-related information, and preservation of lawful criticism, opinion, fair comment, satire, public-record reporting, and discussion of public proceedings.

164. The balance of equities and public interest favor preservation of evidence and narrow protection against false consent, false affiliation, privacy invasion, and evidence destruction while preserving First Amendment activity.

165. Plaintiff seeks a temporary, preliminary, and permanent preservation order and any security determination required by Fed. R. Civ. P. 65(c).

## PRAYER FOR RELIEF

166. Enter judgment in Plaintiff's favor and against Defendants on all counts proved.

167. Award compensatory damages, nominal damages where permitted, punitive damages where legally available, costs, recoverable fees where authorized, and pre- and post-judgment interest where permitted.

168. Declare that Plaintiff did not consent to, appear for, participate in, waive objections to, authorize, endorse, sponsor, affiliate with, or approve Defendants' challenged content or legal-process framing.

169. Order preservation of native evidence, including videos, livestreams, clips, mirrors, posts, reposts, comments, chats, metadata, analytics, monetization records, deletion histories, messages, emails, account records, and platform records relating to the challenged conduct.

170. Enjoin destruction, deletion, alteration, unlisting, concealment, overwriting, or failure to preserve covered evidence.

171. Enjoin false representations that Plaintiff consented, appeared, testified voluntarily, accepted service, waived objections, endorsed content, authorized use of his identity, sponsored content, or affiliated with content.

172. Protect private identifiers and minor-related information from unnecessary public disclosure.

173. Preserve lawful criticism, opinion, fair comment, satire, public-record reporting, and discussion of public proceedings.

174. Award any further relief the Court deems just and proper.

175. Grant trial by jury on all issues so triable.

**VERIFICATION UNDER 28 U.S.C. § 1746**

I, Nikolaos T. Hatziefstathiou, declare under penalty of perjury that I have read the foregoing First Amended Verified Complaint and that the factual allegations stated from my personal knowledge are true and correct, and the allegations stated on information and belief are believed by me to be true based on the facts identified in the pleading.

Executed on 27th July, 2026, at 712 Cedar Grove Rd; Broomall, PA 19008

**NIKOLAOS T. HATZIEFSTATHIOU**
Plaintiff, pro se
712 Cedar Grove Road
Broomall, Pennsylvania 19008
Mobile: (267) 648-8561
Email: nh@oneworldcommand.com